UNITED STATES DISTRICT COURT
EASTERN DISRICT OF NEW YORK
------------------------------------------------------------------------ X

LUCIANO RUSSO,                                                                         Civil Case No. 24-5116

                                   Plaintiff,

            -against-                                                                          **COMPLAINT**

                                                                                        **JURY DEMAND**

HARTFORD FINANCIAL SERVICES GROUP, INC.,

                                   Defendant.

------------------------------------------------------------------------ X

        Plaintiff, by his undersigned attorneys, as and for his Complaint, alleges as follows:

## INTRODUCTION

        1.     Plaintiff developed Irritable Bowel Syndrome which prevented him from working from his normal place of employment because of the distress it caused, difficulties traveling to work, and his need to take frequent bathroom breaks. Nevertheless, Plaintiff was allowed by his employer for a two-year period of time to perform his duties from home. When Plaintiff's employer rescinded this accommodation, and demanded that Plaintiff return to its workplace, against his doctors' recommendation, Plaintiff was put on extended unpaid leave as per his union contract. At that juncture he applied for long term disability benefit pursuant to an insurance policy he had purchased from Hartford.

        2.     The Defendant denied the application for benefits, reasoning, essentially, that Defendant's doctors were mistaken, and that Plaintiff had no disabling condition. That analysis was based only on a remote review of medical records that did not take into account all of the medical records, and did not include additional documentation provided by Plaintiff's doctors; the reviewing doctor never had any consultation with Plaintiff or Plaintiff's doctors, nor was

there an independent examination of Plaintiff. Given the facts, the denial of benefits was arbitrary and capricious and actionable under the Employee Retirement Income Security Act of 1974 ("ERISA").

## JURISDICTION

3. This Court's jurisdiction is invoked pursuant to 29 U.S.C. Section 1331, and 29 U.S.C. 1132(a)(1)(B).

## PARTIES

4. Plaintiff Luciano Russo ("Russo) is a resident of Brooklyn New York and at all relevant times was a beneficiary of an Employee Benefit Plan administered by Defendant.

5. Defendant Hartford Financial Services Group Inc. ("Hartford") is Connecticut based Corporation located at One Hartford Plaza, Hartford, Connecticut 06155, that provides insurance benefits in the United States.

## FACTS RELEVANT TO ALL CLAIMS

6. Plaintiff is the beneficiary of an Employee Benefit Plan purchased by his employer National Grid ("NG") from Defendant Hartford and administered by Defendant Hartford. A copy of the plan is attached herein as Exhibit A.

7. Plaintiff commenced employment with National Grid in 2002.

8. In May 2013 Russo was promoted to the position of Dispatcher in Central Dispatching (Distribution Central Dispatching), for New York City and Downstate.

9. As a Dispatcher, Russo dispatched crews of mechanics to emergency jobs generally involving underground street leaks of gas mains and gas services, i.e., to survey possible leaks, classify them, and determine the need for immediate repair. Essentially, as

emergency work comes in crews are sent to cover that work. Dispatchers work by computer and by phone.

10. In March 2020, as the COVID Pandemic shut down most of New York City, Russo and all other Dispatchers were told to work at home with company-issued laptops and company-issued cellphones. Efforts to have Dispatchers report in to the NG offices were short lived due to numerous cases of COVID. NG was able to install the technology needed on the laptops which could be used at home to do the dispatching work, and telephone connections were created so that employees could communicate with each other and their managers. By about April 2020 the Dispatchers were tied directly into the telephone lines in the office.

11. In July 2021, after the number of COVID cases in NYC lessened, NG started to have the Dispatchers work on a hybrid schedule, some days in the office and some days working at home. Plaintiff Russo asked for, and received, a medical accommodation, pursuant to the Americans with Disabilities Act, and various other Federal, state and city laws, as well as under his union contract, and NG Policy, and was allowed to continue his work at home. Russo's disability at the time involved diabetes, which carried with it an increased risk of contracting COVID, plus limitations created by colitis, a redundant colon, severe irritable bowel syndrome and a pelvic floor disorder, all gastrointestinal conditions which required him to work near a bathroom, and which limited his ability to travel. Doctors Eugene Gibilaro and Paul Piccione ("Treating Physicians") supported Plaintiff's requests.

12. In or about May 2022 NG made it known that it would not accommodate Russo's disabilities with an at-home work schedule any longer. On or about June 7, 2022, Russo received a letter advising him that his disability accommodation request would no longer be granted

because of "the nature of the emergency work the Service Dispatch department performs." He was directed to report to the office.

13. Plaintiff requested reconsideration. As part of that reconsideration, Plaintiff submitted documentation from his Treating Physicians that indicated he could not perform his duties as a dispatcher at his previous place of work in the NG office, but that they could all be performed by him, with accommodation, from Plaintiff's home.

14. Fearing a denial, and being deprived of work, on September 9, 2022, Plaintiff inquired about, but did not apply for, long term disability ("LTD") benefits, for which he was insured by Defendant.

15. On September 30, 2022, that reconsideration was denied by NG, and from that date until on or about January 28, 2023, Russo was out on paid sick leave/short term disability benefits, fully capable of working from home but being denied the opportunity to work. Sick leave was paid by NG's insurance carrier, Sedgwick, because it credited the findings of Plaintiff's doctors, but asserted that the Dispatcher work had to be performed in the NG offices. See Exhibit Q. During this period of time, although Plaintiff had not applied for LTD benefits, because of Plaintiff's informal inquiry, Defendant asked for information and Plaintiff supplied that information. See Exhibit B.

16. On or about January 28, 2023, NG ceased paying Russo sick leave because he had exhausted that benefit. Since that date Russo has not returned to his workplace, has not been given remote work to do at home. National Grid has classified him as "sick no pay."

17. On May 9, 2023 Plaintiff applied to Hartford for LTD benefits. His application is annexed as Exhibit C.

4

18. Subsequently, Plaintiff has supplied the Defendant with updates about his disability, as requested, and his need for accommodation. See Exhibit D.

**The Application and Denial**

19. Plaintiff's Long Term Disability policy provides in pertinent part that:

> We will pay You a Monthly Benefit if You: 1) become Disabled while insured under the The Policy; 2) are Disabled throughout the Elimination Period; 3) remain Disabled beyond the Elimination Period; and 4) submit Proof of Loss to Us.

See Exhibit A, p. 20.

20. On September 18, 2023 Hartford sent a draft report from a Dr. Dalia Ibrahim-Abdelaziz to Dr. Gibilaro which Dr. Gibilaro was asked to comment on. See Exhibit E. In that report, Dr. Ibrahim-Abdelaziz found that Plaintiff was not disabled because Plaintiff had no "functional restrictions" because there was "no limitation in the number of hours per day and days per week the claimant is capable of working." The report was not sent to Dr. Paul Piccione.

21. Dr. Gibilaro responded (Exhibit F) and explained that "while [Plaintiff] was able to conduct his work remotely with this particular disability, it is not practical for him to be at a normal workplace and be gone for hours at a time … . Since his job place has refused to allow remote working and since he cannot be in a usual workplace office setting where he would need to spend hours a day in a bathroom, he needs this disability settlement."

22. On September 27, 2023 Defendant denied Plaintiff's claim (Exhibit G). The denial relied on Dr. Ibrahim-Abdelasziz's report. That denial falsely stated that Dr. Piccone had been consulted by Dr. Ibrahim-Abdelaziz, and falsely stated that Dr. Gibilaro had not responded when asked to review Dr. Ibrahim-Abdelaziz's report. The denial stated that the records did "not support functional impairment and that you were able to perform unrestricted work." This finding ignored Plaintiff's actual medical file and was arbitrary and capricious, since it did not

5

discuss or consider the employer's "essential requirement" that Plaintiff perform that work at the NG office without private bathroom facilities. Inexplicably, Sedgwick, the employer's short-term disability insurer, found Plaintiff to be disabled and eligible for disability benefits based on reports from the Treating Physicians, but Defendant Hartford did not. See Exhibit Q.

23. On February 6, 2024, Plaintiff appealed the denial of benefits. A copy of the appeal letter is attached herein as Exhibit H. That appeal was supplemented by a letter dated February 22, 2024 (Exhibit I), which referred to the claims of another Dispatcher, George Messiha, who had a less restrictive disability than Plaintiff, who needed to work at home, who NG had refused to accommodate, and who Defendant gave benefits to.

24. On March 19, 2024, Defendant responded to Plaintiff's appeal with a letter that indicated Defendant would need more time to make a final determination on the appeal. A copy of that letter is attached herein as Exhibit J.

25. That letter also enclosed a report from another "Independent Medical Examiner" done by a Dr. Jason Reich, who did not speak with the Treating Doctors. Dr. Reich concluded, again exclusively based on review of medical records, that:

> "The complaints are not supported by medical evidence and not interfering with sustained work activity."

See Exhibit J, Reich Report at page 1. Again, this finding conflicted, totally, with the short-term disability carrier's finding that Plaintiff was disabled. See Exhibit Q.

26. On March 21, 2024, Plaintiff submitted a letter to Defendant requesting an extension through April 19, 2024, to submit medical documentation to Defendant. A copy of that letter is attached herein as Exhibit K. On March 25, 2024, Defendant approved the request.

27. On April 1, 2024, Plaintiff requested until April 30, 2024, to submit the medical documentation. A copy of that letter is attached herein as Exhibit L.

28. Defendant did not respond to that request.

29. On April 19, 2024, Plaintiff submitted additional documentation (via facsimile) from his Treating Physicians that, among other things, indicated, "The Plaintiff clearly meets Rome IV criteria for IBD." A copy of the cover letter and the documentation submitted on April 19 is attached herein as Exhibit M.

30. On April 22, 2024, Defendant issued a Final Report upholding its decision to deny benefits. A copy of the Final Report is attached herein as Exhibit N. It rested its conclusions on the Reich report referenced in the March 19, 2024 letter (Exhibit J). See Exhibit J at page 2.

31. The April 22, 2024 decision on the appeal failed to consider the documentation provided on April 19, 2024, Exhibit M, and ignored all of the information from the Treating Physicians regarding the ability of Plaintiff to return to the office, which Plaintiff had submitted going back to December 2022.

32. On April 29, 2024, Plaintiff sent a letter to Defendant asking them to reconsider their determination and review the documentation that had been timely submitted. A copy of that letter is attached herein as Exhibit O.

33. On May 9, 2024, Defendant refused to reconsider and noted that the April 22 determination was final. A copy of the May 9, 2024, letter is attached herein as Exhibit P.

## FIRST CAUSE OF ACTION

### (ERISA § 502(a)(1)(B), 29 U.S.C. 1132(a)(1)(B))

34. Plaintiff repeats and realleges all of the allegations contained in all the preceding paragraphs as if fully set forth herein.

35. Defendant arbitrarily and capriciously withheld benefits (enumerated at Exhibit A, p. 20) from Plaintiff by relying on a cursory and summary review of Plaintiff's medical records without an examination of Plaintiff, without any consultation with his Treating Physicians, without review of the updated documentation produced by Plaintiff's Treating Physicians, and without consideration of what the employer insisted was an essential job function, i.e., working in the office. It also did not explain how such a consideration was applied in the case of George Messiha but not in Plaintiff's case.

36. By doing so Defendant violated Plaintiff's rights secured by 29 U.S.C. 1132(a)(1)(B).

## DAMAGES

37. Plaintiff, as a result of Defendant's actions, has suffered a loss of benefits, in a sum to be determined after trial.

38. By making its determination against Plaintiff, as described herein above, Defendant acted with a reckless disregard of Plaintiff's rights, entitling him to punitive damages in the amount of $2.5 million.

## JURY DEMAND

39. Plaintiff demands a jury trial.

8

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court enter judgment:

a. Awarding Plaintiff all lost benefits.

b. Awarding Plaintiff punitive damages in the amount of $2.5 million.

c. Awarding Plaintiff attorneys' costs and fees.

d. Granting such other and further relief as is just and equitable.

Dated: New York, New York
July 23, 2024

    ADVOCATES FOR JUSTICE,
    CHARTERED ATTORNEYS
    *Attorneys for Plaintiff*

    By: /s/ *Arthur Z. Schwartz*
        Arthur Z. Schwartz
    225 Broadway, Suite 1902
    New York, New York 10007
    Phone : (212) 285-1400
    Email: aschwartz@afjlaw.com